**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 21-cr-263 (TSC)** |
| | : | |
| **RUSSELL DEAN ALFORD,** | : | |
| | : | |
| **Defendant.** | : | |

**MOTION IN LIMINE TO PRECLUDE PROFFERED EVIDENCE**
**OF INATTENTIONAL BLINDNESS**

Defendant Russell Dean Alford is currently charged by information with a variety of

crimes arising out of his participation in the January 6, 2021 riot at the U.S. Capitol building.

The government submits this motion to preclude the introduction of expert testimony from Dr.

Emily Ward about "inattentional blindness."    On July 13, 2022, the defense gave notice of its

intent to present:

> Dr. Ward is expected to testify about the phenomenon known as Inattentional Blindness.
> Inattentional blindness occurs when an individual fails to notice an otherwise noticeable
> object, event, another individual, etc. when the person's attention is occupied. Dr. Ward
> will not offer an opinion as to whether anyone involved in this case experienced
> Inattentional Blindness; rather, her expected testimony will be explanatory in nature.

Email from Def. to government (attached as Exhibit A). The government objects to the

admissibility of the proposed expert testimony for several reasons. As an initial matter, the

government does not contest the qualifications of the proposed expert. The government does,

however, object to the relevance, reliability, and manner of the testimony. The proposed expert

testimony is not relevant.    It does not "fit" within the subjects of testimony appropriate for

expert admissibility.    Inattentional blindness is simply an attempt to codify and bolster through

expert testimony a claim that the defendant was not paying attention. Second, the social science

upon which it is based is not reliable. That is, the expert codification of a claim that certain

people do not pay attention to certain details under certain circumstances is hardly the subject of scientific exactitude.   On the one hand, it is common sense that someone crossing the street while sending a text may not be paying attention.   On the other hand, the extent and degree to which they may not be paying attention is not quantifiable.   In short, it is not the proper subject of expert testimony.   Third, the subject matter of inattentional blindness is not the sort of testimony that is, or ought to be, admissible through the vehicle of a "teaching expert."   The proposed expert testimony should be prohibited.   Alternatively, the government requests a *Daubert* hearing.

## I.   FACTUAL BACKGROUND

On January 6, 2021, Congress assembled in a Joint Session at the United States Capitol to declare the winner of the 2020 presidential election by reviewing and certifying the Electoral College ballots.

The defendant and a friend drove from Alabama to the District of Columbia to attend the former President's Stop the Steal rally. They got a hotel outside of the city, and then went to D.C. on January 6, 2021 to attend the rally. At the conclusion of the rally, the crowd—including the defendant—began to walk towards the U.S. Capitol. When he approached the Capitol, the defendant entered the building as part of the crowd and remained inside for about 15 minutes.

The defendant was inside the U.S. Capitol when another rioter, Ashli Babbitt, was shot in the Speaker's Lobby by a Capitol police officer. The defendant posted two videos from inside the Capitol to his Facebook page. One video he titled "Inside Capitol building as girl murdered."

 

In one of the defendant's videos, rioters can be heard discussing the shooting. In addition, the defendant posted to social media about the Ashli Babbitt shooting "Gunshot. I was right there. Around corner."



And, in fact, the defendant was just around the corner when Ms. Babbitt was shot.



As officers were responding to the scene of the shooting, rioters can be seen resisting officers and trying to avoid leaving the U.S. Capitol as they were being forced out. The defendant took such action: as officers forced other rioters out, he stepped to the side and into a corner of the building, behind a partially-closed door, so that he could observe and film the crowd. The defendant's position can be seen in the image below, which is taken from a video discussed at greater length in the government's motion in limine regarding authentication (ECF No. 52). The defendant stayed at the entranceway to the Capitol as the alarms were blaring and officers were forcing rioters out of the Capitol.

4



The defendant waited in the entranceway, despite police commands to leave, for about two minutes.

On January 20, 2021, when FBI agents approached the defendant in Alabama, the defendant said "I wondered when ya'll were going to show up. Guess you seen the videos on my Facebook page." The defendant then asked if the agents were going to take him to jail. The defendant claimed that he followed the crowd into the Capitol and entered through doors that had been broken open by unknown people. He said he did not see what happened at the front of the crowd, or how the doors had been opened in the first place. The defendant acknowledged that he smelled tear gas. The defendant acknowledged that he posted two videos to his Facebook page and said he had several more short videos on his cellphone of individuals whose actions he thought was suspicious. He showed a couple of those to the interviewing agents. The defendant said that upon exiting the Capitol, he observed blood on the ground and said he took several photos with his phone. He showed the agents photos of the blood and claimed it was fake blood that had been poured on the ground.

The defendant is charged with four crimes relating to Congress's meeting at the United States Capitol on January 6, 2021, to certify the Electoral College vote for president. First, he is

charged with entering and remaining in a restricted building (18 U.S.C. § 1752(a)(1)). Second,

he is charged with disorderly or disruptive conduct in a restricted building (18 U.S.C. §

1752(a)(2)). Third, he is charged with disorderly and disruptive conduct in any of the Capitol

Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of

Congress or either House of Congress (18 U.S.C. § 5104(e)(2)(D)).    Fourth, he is charged with

parading, demonstrating, and picketing in a Capitol Building (18 U.S.C. § 5104(e)(2)(G)).

## II.    GENERAL LEGAL STANDARD AND PRINCIPLES

Federal Rule of Evidence 702 principally governs admission of expert testimony. The

party seeking to present the expert's testimony must convince the Court of its admissibility by a

preponderance of the evidence. *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 592(1993);

*see also United States v. Libby*, 461 F. Supp. 2d 3 (D.D.C. 2006). In all instances, the proffered

expert must be qualified "by knowledge, skill, experience, training, or education," and her

testimony must be helpful to the trier of fact. Fed. R. Evid. 702; *see Miller v. Holzmann*, 563 F.

Supp. 2d 54 (D.D.C. 2008). An expert's testimony must be "based upon sufficient facts or data"

and must also be "the product of reliable principles and methods," applied "reliably to the facts

of the case." *Id.*

When an expert testifies "to educate the factfinder on general principles," Rule 702

requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the

factfinder can be assisted by an expert; (3) the testimony "fit" the facts of the case, and (4) the

testimony be reliable. Fed. R. Evid. 702 Advisory Committee's Note; *Miller*, 563 F. Supp. 2d at

92. The district court assessing a proffered expert must therefore conduct a "preliminary

assessment of whether the reasoning or methodology underlying the testimony is scientifically

valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. This assessment "ensure[s] the reliability and relevancy of expert testimony," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152,(1999), and "that the evidence or testimony 'assist[s] the trier of fact to understand the evidence or to determine a fact in issue.' *Daubert*, 509 U.S. at 591 (citation omitted).

### III.    ARGUMENT

The defendant seeks to offer the opinion of Dr. Ward regarding "the phenomenon known as Inattentional Blindness." Exhibit A. That testimony should be barred for two reasons. First, even assuming inattentional blindness is a viable scientific theory, its commonsense message— sometimes people who are focused on one thing fail to observe something else—would not aid the jury. Second, the proposed testimony would not fit the facts in the defendant's case. The Court should therefore deny the motion, or, in the alternative, conduct a *Daubert* hearing.

Any expert testimony on "inattentional blindness" would not address "a subject matter on which the factfinder can be assisted by an expert."    Fed. R. Evid. 702.    As an initial matter, it is by no means clear that the "phenomenon" Def. Email (July 13, 2022), known as "inattentional blindness" is appropriately considered a viable scientific theory on which any expert should be permitted to testify.    *See* Hyman, *When Expert Witnesses Are the Problem: How do we stop the misrepresentation of science in the courtroom?*, Psychology Today, Jan. 29, 2022 (criticizing use of "inattentional blindness" in the courtroom), https://www.psychologytoday.com/us/blog/mental-mishaps/202201/when-expert-witnesses-are-the-problem, last accessed Jul. 24, 2022.    In any event, any proposed "inattentional blindness" testimony would not aid the jury's consideration of any matters at trial.    Simply stated,

"inattentional blindness" is a psychological term for the commonsensical notion that a person distracted by one thing does not pay attention or fully process something else that is occurring. Presumably the defendant seeks admission of this proposed testimony in support of a defense that he did not knowingly enter the restricted Capitol area without lawful authority because he was distracted by some other events that were transpiring on January 6., 2021.   But no expert testimony is needed to bolster that straightforward claim.   Perhaps unsurprisingly, the defendant has not identified (nor has the government found) any federal criminal case in which a court has admitted expert testimony on "inattentional blindness."

Second, the defendant cannot establish that the proposed testimony would "fit" the facts of this case.   *See* Fed. R. Evid. 702.   As one court rejecting proposed expert testimony on "inattentional blindness" observed, "the complex cognitive neurological processes taking place in the brain which can explain inattentive blindness do not serve to assist the jury in making factual determinations concerning fault."   *See Miller v Lewis*, 2013 N.Y. Misc. LEXIS 6868 (N.Y. King Co. 2013).   The same is true here.   Whatever the relevant science behind "inattentional blindness," it can offer no insight into whether defendant knowingly entered or remained in the restricted Capitol area, knowingly or willfully engaged in disruptive conduct while intending to disrupt government business, and knowingly and willfully paraded and demonstrated inside the Capitol building.   In the handful of cases where courts have appeared to permit "inattentional blindness" evidence, the issues have been fault-based determinations in civil cases involving a simple factual pattern such as a car crash.   *See, e.g.*, *Sudre v. Port of Seattle*, 2016 U.S. Dist. LEXIS 166882, 2016 WL 7035062 (W.D. WA, Dec. 2, 2016) (slip and fall case), *Miller v Lewis*, 2013 N.Y. Misc. LEXIS 6868 (N.Y. King Co. 2013) (truck accident

8

negligence case), *Brettman v. Virgil Cook & Son, Inc*., 2020 IL App (2d) 190955, 179 N.E.3d 867 (Ill. Ct. App. 2020) (car accident); *People v. Mehserle*, 206 Cal. App. 4th 1125, 142 Cal. Rptr. 3d 423 (Cal. App. 2012); *State v. Brown*, 194 Wn. 2d 972 (Wash. 2019) (turn signal issue), ;*Nay v. BNSF Ry. Co*., 2021 U.S. Dist. LEXIS 221433 (W.D. WA, Dec. 16, 2021) (human factors expert testimony admissible in train accident case), *Riley v. State*, 227 Md. App. 249 (Md. Ct. App. 2019) (use of force expert describing inattentional blindness), *Crawford v. ITW Food Equip. Grp., LLC,* 977 F.3d 1331 (11th Cir. 2020) ("Dr. Mark Edwards, a human factors engineer who discussed the inverse relationship between job performance and workload, as well as how workers can fail to see objects that are not the focus of their attention (which he characterized as "inattentional blindness")), *State v. Shong*, 828 N.W.2d 593, 346 Wis. 2d 732 (Wis. App. 2013) (defendant introduced testimony of a "human factors psychologist" who discussed "inattentional blindness" in the context of operating a motor vehicle); *Castro v. San Diego Gas & Elec. Co*., 2010 Cal. App. Unpub. LEXIS 3488 (Ca. App. Ct., 4th Div. May 13, 2010) (an expert in electrical engineering and biomedical engineering testified in power line accident case that "inattentional blindness" occurs when "human beings become blind to obvious objects," by focusing their processing power on an important immediate task, and ignoring other factors in the environment"); *Browne v. State ex rel. Dep't of Transp. & Dev*., 2016 La. App. Unpub. LEXIS 19, 2016 WL 455938 (La. Ct. App., 1st Cir., Feb., 4, 2016) (One possible explanation raised by expert's testimony as the concept of "inattentional blindness" which occurs when a motorist misses some obvious things when they are looking back and forth).   By contrast, the facts here are not susceptible to any meaningful insight with reference to the "phenomenon" of "inattentional blindness."

9

WHEREFORE, the government respectfully requests that this Court grant the motion for a pre-trial determination that expert testimony concerning the concept of inattentional blindness is inadmissible in this case, or, in the alternative, conduct a *Daubert* hearing.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:

/s/ James D. Peterson

James D. Peterson
Special Assistant United States Attorney
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
Mobile: (202) 230-0693
James.d.peterson@usdoj.gov

s/ Michael J. Romano

MICHAEL J. ROMANO
IL Bar No. 6293658
Trial Attorney, Detailee
555 4th Street, N.W.
Washington, DC 20530
Michael.Romano@usdoj.gov
(202) 307-6691