UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 1:21-cr-00263-TSC |
| v. | : | |
| | : | |
| RUSSELL DEAN ALFORD, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION IN LIMINE TO PRECLUDE USE OF PREJUDICIAL TERMINOLOGY

Defendant Russell Dean Alford, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved *in limine* for an order precluding the government and its witnesses from using terms and phrases that he views as inflammatory. (ECF No. 56.) But in essence, he asks for the government to sterilize its language in describing his crimes. Indeed, many of the terms with which the defendant takes issue are fair descriptions of the riot, the rioters, and his conduct, and the Court should deny his motion.

The defendant argues, first, that terms like "rioter" or "insurrection" "could unduly inflame juror passions," which "will tempt the jury to base a verdict on emotion instead of evidence." *Id.* at 1-2. Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (quoting Fed. R. Evid. 403, advisory committee's note). By their very nature, criminal charges involve an accusation that someone has wronged another person, or has wronged society—thus, by their nature, criminal charges arouse emotion. And there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "The United States Attorney . . . may prosecute with earnestness and vigor -- indeed, he should do so." *Berger*, 295

U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (*quoting United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of inflammatory words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("there is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to water down its language and step gingerly around the significance of the defendant's crimes. The riot on January 6, 2021, was in fact an attack on the United States Capitol, the government of the United States, and American democracy. In fact, after carefully considering the facts of other January 6 cases, many judges of this District have recognized the riot as just such an attack. *See, e.g.*, *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40-41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147-48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election."); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33-34, January 26, 2022 ("the effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States

Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language was hyperbole; rather, these findings used vivid and violent language because they described a violent event. So, too, will prosecutors need to use accurate language—and not euphemisms—to describe the nature and gravity of the defendant's conduct.

The defendant argues, next, that the government and its witnesses should not be able to use words like "rioter" and "insurrection" because they "emphasize group culpability and distract from the proper question of individual culpability." (ECF No. 56 at 2.) To be sure, to convict him, the jury must find that the defendant committed each offense with which he is charged. It is not enough for the government to show that the defendant was simply present near others who committed crimes. But the defendant's argument ignores that the nature of these crimes is collective action. It was the mob's collective action that disrupted Congress, and the government further needs to prove the defendant's intent, which puts the behavior of other, nearby rioters at issue.

Testimony from police officers, who worked to secure the Capitol building on January 6, 2021, will make clear how the mob's collective action disrupted Congress. None of the rioters were authorized to enter the Capitol. None of them submitted to screening by the U.S. Capitol Police. Police officer witnesses will explain that, in expelling rioters, they could not distinguish between "peaceful" rioters and violent ones: everyone had to leave. This is because the police could not predict who would act violently; any member of the crowd might be a threat to them. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing on a specific individual. The size of the crowd enabled the worst of the rioters, and Congress could not resume its business until all of them were expelled.

Furthermore, the defendant's knowledge of the riot bears on his *mens rea* for each of the

charged offenses. And here, the actions of other rioters matter when they were committed in the defendant's immediate vicinity. The Upper House Door, through which the defendant entered the Capitol, was opened by another rioter. One of that door's windowpanes had been shattered, and the fractured glass was at about the defendant's eye level. At the time of the defendant's entry, and throughout his stay in the Capitol, the door was in a constant state of alarm; witnesses will describe that alarm as "piercing," and the jury will have an opportunity to hear just how loud it was. The government's evidence will further show that the defendant was near other rioters as they were ordered to leave the Capitol, and was even near others who were physically removed. At one point, as a large crowd was being ordered out, the defendant stood to the side of the crowd, positioned himself in the corner of a doorway, and watched people exit. In doing so, he disobeyed police orders to leave. So, contrary to the defendant's argument, his mental state cannot be separated from the conduct of the crowd around him.

Of course, the defendant's communications with others will also inform whether a term like "rioter" is fairly applied to him. And here, it is. From November 3, 2020, through January 6, 2021, the defendant's Facebook feed was replete with warnings that he was not "going to comply with Communism just because you voted for it" (Nov. 14, 2020); that "I got bullets, fuck them [the Democrats]" (Nov. 20, 2020); that the Republic would be restored "by ballot or by bullet" (Nov. 22, 2020); that "[w]hen they invalidated my vote, they invalidated my consent to be governed by them" (Jan. 3, 2021); and that "[t]he day of reckoning is NOW!" (Jan. 5, 2020). Through these and other messages, the defendant demonstrated his intent to disrupt Congress's business and his understanding of the importance of collective action at the Capitol.

Finally, the defendant argues that the government and its witnesses should be precluded from using words like "trespass," "disorderly conduct," and "demonstrating" during the

presentation of witness testimony. (ECF No. 2.) Here, the defendant's concern is not an appeal to the jury's emotions, but that such terminology amounts to an improper legal conclusion. But the defendant cites no meaningful support for his argument. *United States ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94 (D.D.C. 2002) is a civil case in which Judge Friedman refused to allow testimony by an expert because (1) the plaintiff's expert report failed to comply with Fed. R. Civ. P. 26(a)(2)(B) and (2) the report "contain[ed] nothing more than legal opinions and unsubstantiated assessments of evidence." *Mossey*, 231 F. Supp. 2d at 98. In that case, it was apparent that the expert had no scientific or technical expertise that would help the jury, but rather that the plaintiff sought to use him solely to explain legal concepts that would intrude upon the Court's obligation to instruct the jury. *Id.* That is a far cry from the situation in this case, where police officers might explain that rioters were trespassing because no one was authorized to enter the Capitol on January 6, 2021, or that the presence of the crowd was disruptive because police had to clear the entire crowd before Congress could resume its business. Indeed, the federal rules do not prohibit such testimony. *See* Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.")

      For the reasons stated above, the defendant's motion should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    */s/ Michael J. Romano*
        MICHAEL J. ROMANO
        IL Bar No. 6293658
        Trial Attorney, Detailee
        601 D Street, N.W.
        Washington, D.C. 20530
        Telephone No. (202) 262-7850
        michael.romano@usdoj.gov

        */s/ James D. Peterson*
        James D. Peterson
        Special Assistant United States Attorney
        Bar No. VA 35373
        United States Department of Justice
        1331 F Street N.W. 6th Floor
        Washington, D.C. 20530
        Desk: (202) 353-0796
        Mobile: (202) 230-0693
        James.d.peterson@usdoj.gov