IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-00263-TSC |
| | ) | |
| RUSSELL DEAN ALFORD | ) | |

**RESPONSE TO GOVERNMENT'S MOTION IN LIMINE
TO PRECLUDE PROFFERED EVIDENCE
OF INATTENTIONAL BLINDNESS**

The Defendant, Russell Dean Alford, hereby replies to the government's motion in limine to exclude the testimony of Dr. Emily Ward, Ph.D. Doc. 54. Dr. Ward is a psychologist who works as a Senior Research Scientist for Health Economics & Outcomes Research at Spring Health in New York City and was previously a psychology professor at the University of Wisconsin. *See* Exhibit 1 (curriculum vitae). She would testify about a phenomenon[1] of human perception that psychologists refer to as "inattentional blindness." The government argues that the testimony would not be relevant, nor reliable, nor (as Federal Rule of Evidence 702(a) requires) sufficiently "specialized" to be admissible. *See generally id.* The government is wrong on each

---

[1] The government's motion repeats the word "phenomenon" in quotation marks in the seeming belief that the word connotes something chimerical. *See* Doc. 54 at 7, 9. It does not. As used in reference to inattentional blindness, "phenomenon" carries its dictionary definition: "an observable fact or event"; "an object or aspect known through the senses rather than by thought or intuition"; "a temporal or spatiotemporal object of sensory experience as distinguished from a noumenon"; or "a fact or event of scientific interest susceptible to scientific description and explanation." Merriam-Webster, *Phenomenon*, https://www.merriam-webster.com/dictionary/phenomenon.

1

point, because testimony about inattentional blindness directly applies to important questions of fact in this case; it is widely understood and accepted among psychologists; and it involves specialized knowledge that most lay jurors do not possess. The government's motion should be denied and Dr. Ward's expert testimony allowed.

I.  **Dr. Ward's testimony about inattentional blindness is relevant.**

To prove the mens rea elements of the charges against Mr. Alford—for example, knowledge that access to a particular area was restricted—the government will present evidence of the surrounding circumstances. Dr. Ward's testimony would relate to the likelihood that Mr. Alford perceived those circumstances. The testimony therefore is relevant, because it "has [a] tendency to make a fact more or less probable than it would be without the evidence," and the fact—here, a mental state that is an element of an offense—is "of consequence in determining the action." Fed. R. Evid. 401 (defining relevant evidence); *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 587 (1993) ("Rule [401]'s basic standard of relevance . . . is a liberal one").

Mr. Alford is charged with four misdemeanor counts involving conduct in or near the U.S. Capitol Building on January 6, 2021. Doc. 8. At trial, the government will seek to prove, among other things, that Mr. Alford knowingly entered or remained in a restricted area. *Id.* at 1. As the government notes in a separate motion, on the Capitol grounds that day there were visible indications that certain areas were restricted. *See* Doc. 53 at 3 (arguing that "obvious police barricades [and] police lines" made it unreasonable for anyone to believe the Capitol Building and grounds were

not restricted areas (quoting *United States v. Chrestman*, 525 F. Supp. 3d 14, 32 (D.D.C. 2021)).

But Capitol surveillance video shows that there was a lot going on at the Capitol on January 6—a lot to see (or fail to see) and hear (or fail to hear). Over the course of that afternoon, some police lines shifted, thinned, or simply melted away; some once-obvious barricades were obstructed by crowds, or moved, or *re*moved altogether. To decide questions about Mr. Alford's knowledge and intent, the jury will necessarily rely on circumstantial evidence, since "it is seldom possible to present testimonial or direct evidence of an accused's state of mind." *Mallette v. Scully*, 752 F.2d 26 (2d Cir. 1984). The government presumably will draw attention to specific details in video evidence, just as it has done in pretrial pleadings to the Court. *See, e.g.*, Doc. 52 at 10 (describing video of "damage to [a] door's windowpanes and the continuous sound of an alarm").

That's why Dr. Ward's testimony about inattentional blindness is relevant and will be helpful to the jury. As an article cited in the government's motion explains, "Inattentional blindness is a well-documented phenomenon. In a complex environment, people may become focused on a single thing. When focused, they may . . . fail to see something unrelated to their focused attention." Ira Hyman, *When Expert Witnesses Are the Problem*, Psychology Today, Jan. 29, 2022, https://www.psychologytoday.com/us/blog/mental-mishaps/202201/when-expert-

witnesses-are-the-problem,[2] *cited in* Doc. 54 at 7. The government misses the point in asserting that "[i]nattentional blindness is simply an attempt to codify and bolster through expert testimony a claim that the defendant was not paying attention." Doc. 54 at 1. On the contrary, Dr. Ward's testimony will explain why, in chaotic and unfamiliar surroundings, Mr. Alford's attention might not have been focused on the same things the government will direct jurors' attention to.

That might sound like a "commonsense" concept, as the government's motion claims, *id.* at 7, but it's not. The same article explains that research on inattentional blindness has shown that our intuitions about what we're likely to perceive—such as the intuitions that jurors might naturally rely on to draw inferences about Mr. Alford's mental state—can be misleading. *See* Hyman, *supra* (explaining how, when a specific detail of a video is pointed out to study subjects, they are "surprised that [they] could have missed" the detail even though *they did* miss it the first time they watched the video). Dr. Ward's testimony explaining this well-established, widely accepted psychological phenomenon will assist jurors in deciding whether the circumstantial evidence suffices to prove the mens rea elements beyond a reasonable doubt.

---

[2] The government claims that this article "criticiz[es] use of 'inattentional blindness' in the courtroom," Doc. 54 at 7, but the author actually criticizes the *mis*use of such evidence. *See* Hyman, *supra* (noting that "[g]ood science can be misused," and criticizing expert testimony that "*misrepresent[s]* inattentional blindness to defend police officers who shoot unarmed people" (emphasis added)).

4

## II. Dr. Ward's testimony is reliable.

Courts perform a gatekeeping function to ensure that factfinders are not led astray by unreliable scientific or other expert testimony. *Daubert*, 509 U.S. at 597. The government asks the Court to find that Dr. Ward's testimony about inattentional blindness must be excluded as unreliable. Its position is not simply that her explanation of inattentional blindness should be tested by cross-examination, or that the jury should be instructed that it need not unquestioningly accept her explanation or uncritically apply it to the facts. Instead, even though the government "does not contest [Dr. Ward's] qualifications," Doc. 54 at 1, it contends that the jury should not hear a well-credentialed psychologist testify about a subject on which she has conducted research and published peer-reviewed writings.

The government asserts that "the social science[3] upon which [inattentional blindness] is based is not reliable," *id.*, but its argument on that point is practically no argument at all. As the gatekeeper for expert testimony, the Court's "task [is to] ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert*, 509 U.S. at 597). The relevance of Dr. Ward's testimony is discussed in the preceding section. As to reliability, the Supreme Court has explained that "testing, peer review, error rates, and 'acceptability' in the relevant scientific community" are "factors . . . [that] might prove helpful in determining the reliability of a particular

---

[3] The government's "social science" label is inaccurate. Inattentional blindness is a precept about individual perception. It involves cognition and consciousness, not social interactions. *See supra* p. 3–4.

5

scientific 'theory or technique.'" *Id.* (citing *Daubert*, 509 U.S. at 593–94); *see also* Fed. R. Evid. 702 (stating that expert testimony should be "based on sufficient facts or data" and be "the product of reliable principles and methods"). On those matters, the government's motion is entirely silent. It doesn't dispute that inattentional blindness has been the subject of extensive testing and been peer-reviewed in psychological literature, nor argue that conclusions about the phenomenon are prone to error, nor deny that such conclusions are widely accepted.

The government also doesn't claim that other courts have broadly concluded that inattentional blindness is unreliable. In fact, it cites several cases in which expert testimony about inattentional blindness was offered. Doc. 54 at 8–9. To the government's credit, it doesn't only cite cases in which courts excluded such evidence; to its detriment, however, *courts admitted* such evidence in all but one case. And in that one, *Miller v Lewis*, 2013 N.Y. Misc. LEXIS 6868, 2013 WL 10858367 (N.Y. King Co. 2013), the ruling was case-specific. *See id.*, 2013 WL 10858367, at *2 (expressly disavowing the conclusion "that such expert testimony is never appropriate"). In other words, even in excluding expert testimony about inattentional blindness in *Miller*, the court—like the courts in every other case the government cites—*did not* find the testimony unreliable.

The government has offered only a conclusory assertion that Dr. Ward's testimony is unreliable. It identifies no *Daubert* factor that supports the assertion, nor any case that has accepted it as a general proposition. So, while an evidentiary hearing sometimes is needed to "to investigate reliability," *United States v. Machado-*

*Erazo*, 950 F. Supp. 2d 49, 52 (D.D.C. 2013) (quoting *Kumho Tire Co.*, 526 U.S. at 152), here the government has given no reason for evidence and factfinding to resolve doubt about even one *Daubert* factor. This Court "[is] not required to hold a *Daubert* hearing before ruling on the admissibility of scientific evidence," *id.* (quoting *In re Hanford Nuclear Rsrv. Litig.*, 292 F.3d 1124, 1138–39 (9th Cir. 2002)), and need not hold one in this case because there is no substantial dispute about the reliability of the proffered scientific testimony.

As Dr. Hyman wrote, "Inattentional blindness is a documented effect" and "a real phenomenon." Hyman, *supra*. The government makes no serious argument to the contrary. Scientific reliability is not an obstacle to Dr. Ward's testimony.

**III.   Dr. Ward will testify about specialized knowledge that lay jurors usually do not possess.**

Expert testimony should help jurors to understand something better than they could on their own; in the words of Rule 702, it should "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a). The government argues that Dr. Ward's testimony cannot do that. Doc. 54 at 7–8. It asserts that "'inattentional blindness' is a psychological term for" something jurors already understand on their own—"the commonsensical notion that a person distracted by one thing does not pay attention or fully process something else that is occurring." *Id.* at 8. But that misunderstands the science. As Dr. Hyman's article points out, inattentional blindness is not intuitive at all. *See supra* p. 4.

Dr. Ward's own published writing in academic literature has emphasized the same point: inattentional blindness "is *deeply counterintuitive*: almost everyone is

surprised that [perceptual] failures of awareness of this magnitude are even possible." Emily J. Ward & Brian J. Scholl, *Inattentional blindness reflects limitations on perception, not memory: Evidence from repeated failures of awareness*, 22 Psychonomic Bull. & Rev. 722, 722 (2014) (emphasis added). The matter is like testimony that helps jurors to understand why an eyewitness's confident in-court identification of a nonacquaintance defendant might not be as trustworthy as the witness herself believes. Dr. Ward's testimony explaining the surprising phenomenon of inattentional blindness would "help the [jurors] to understand the evidence" in ways that they would not on their own. Fed. R. Evid. 702(a).

To be clear, the defense does not expect Dr. Ward to express an opinion that Mr. Alford did or didn't know a particular fact or perceive a particular circumstance. Rather, her testimony would help jurors decide how much weight they should give the government's circumstantial evidence. She "is qualified as an expert by knowledge, skill, experience, training, or education," and her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," *id.* Because she will testify to relevant matters that are proper subjects for expert testimony, the government's motion should be denied.

                            Respectfully submitted,

                            KEVIN L. BUTLER
                            Federal Public Defender
                            Northern District of Alabama

                            **/s/ James T. Gibson**
                            JAMES T. GIBSON
                            Assistant Federal Public Defender

                            **/s/ Tobie J. Smith**
                            TOBIE J. SMITH

Research & Writing Attorney

Federal Public Defender's Office
Northern District of Alabama
505 20th Street North, Suite 1425
Birmingham, AL 35203
205-208-7170
tobie_smith@fd.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 17, 2022, I electronically filed the foregoing via this Court's CM/ECF system, which will send notice of such filing to all counsel of record.

Respectfully submitted,

**/s/ Tobie J. Smith**
TOBIE J. SMITH
Research & Writing Attorney

9