IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-00263-TSC |
| | ) | |
| RUSSELL DEAN ALFORD | ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO
MOTION IN LIMINE TO PRECLUDE
USE OF PREJUDICIAL TERMINOLOGY**

The Defendant, Russell Dean Alford, through counsel, hereby replies to the government's response, Doc. 59, to Mr. Alford's motion in limine requesting "an order that the government may not, and must instruct its witnesses not to, use inflammatory, value-laden, or legally conclusory words to describe" persons and events at the U.S. Capitol on January 6, 2021, Doc. 56. The government opposes the motion as an unfounded request "to sterilize [the government's] language" and stifle adversarial advocacy, and it argues that "many of the [challenged] terms . . . are fair descriptions," Doc. 59 at 1.

The government's response takes an overbroad and unnuanced view of zealous advocacy. For example, although this motion in limine concerns the language that may fairly be used in front of a jury during the guilt phase of trial, the government supports its argument by quoting extensively from *judges'* statements at *sentencing* hearings. *See id.* at 2–3. Obviously, a judge isn't going to prejudice herself with her own words at a hearing where she is the decisionmaker. But just as obviously, it

1

would be wildly inappropriate for a judge to use equivalent words to refer to a defendant in front of a jury.

In any event, Mr. Alford's motion isn't concerned with the Court, but with the government and its witnesses. *See* Doc. 56. The government's response fails to acknowledge the problems with using inflammatory language at trial, and it fails to appreciate that both the audience (i.e., whether the jury is present or not) and the stage in the proceedings bear heavily on whether such language may be allowed.

**I. Managing the prejudicial use of inflammatory language that impugns a defendant's character or suggests guilt by association is a matter entrusted to the Court's discretion.**

**A. The government should not be allowed to use terms that disparage Mr. Alford's character.**

The government is right to an extent—there is no absolute bar against inflammatory language. *United States v. Felton*, 417 F.3d 97, 103 (1st Cir. 2005) ("It is hard to lay down a general rule as to epithet and rhetoric because the considerations are matters of degree: these include accuracy in description, threat of unfair prejudice, frequency of use, and alternative means of description."). Instead, "these are matters for the trial judge's judgment." *Id.* No per se rule requires a mistrial if a prosecutor calls a defendant "a thug" or "an animal." *See Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986); *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1293 (11th Cir. 2012). But there are good reasons for the Court to limit or forbid such terms. *See Darden*, 477 U.S. at 180 (calling defendant "animal" was "offensive" and "undoubtedly . . . improper"). Ad hominem labels like "insurrectionist" and "rioter" carry implications that go beyond conduct, to character. The government

should build its case with evidence, not rhetorical low blows. Attacks on character distract the jury from genuine issues and should be excluded.[1]

### B. The government should not be allowed to use terms that imply guilt by association.

Moreover, as Mr. Alford's motion in limine notes, "[w]ords like 'rioter' and 'insurrection' emphasize group culpability and distract from the proper question of individual culpability." Doc. 56 at 2. The government gives passing credit to the principle that "[i]t is not enough for the government to show that the defendant was simply present near others who committed crimes." Doc. 59 at 3. Then, however, it pivots to a full-throated argument for guilt by association: "[T]he nature of these crimes is collective action. It was the mob's collective action that disrupted Congress, and the government further needs to prove the defendant's intent, which puts the behavior of other, nearby rioters at issue." *Id.*

That might be the case the government hopes to make, but it is not rooted in the elements of the charged offenses, which maintain a consistent focus on a defendant's personal actions, knowledge, and intentions. *See* 18 U.S.C. § 1752(a)(1),

---

[1] *United States v. Wright*, 489 F.2d 1181, 1186 (D.C. Cir. 1973) (prosecutor may not "comment on the character of the accused" where defendant has not "put[] his character at issue"); *United States v. Cannon*, 88 F.3d 1495, 1502 (8th Cir. 1996) ("Referring to defendants as 'bad people' simply does not further the aims of justice or aid in the search for truth, and is likely to inflame bias in the jury and to result in a verdict based on something other than the evidence."), *abrogated on other grounds by Watson v. United States*, 552 U.S. 74, 83 (2007); *United States v. Schuler*, 813 F.2d 978, 980–81 (9th Cir. 1987) (prosecutorial arguments with "apparent[] . . . purpose of showing that [the defendant] was of bad character" violated due-process right to fair trial); *Washington v. Hofbauer*, 228 F.3d 689, 699–700 (6th Cir. 2000) (arguments attacking defendant's character constituted prosecutorial misconduct).

(2); 40 U.S.C. § 5104(e)(2)(D), (G). The government should not be allowed to point to others' conduct to persuade the jury that, for example, Mr. Alford "engage[d] in disorderly or disruptive conduct," §§ 1752(a)(2); 5104(e)(2)(D). *See Krulewitch v. United States*, 336 U.S. 440, 454 (1949) (Jackson, J., concurring in the judgment and opinion of the Court) ("It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together."). Evidence and arguments associating a defendant with another person who behaved criminally can "create a grave risk of spillover prejudice . . . [and] 'prevent[] the jury from making a reliable judgment about [the defendant's personal] guilt or innocence." *United States v. Martínez*, 994 F.3d 1, 15 (1st Cir. 2021) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

If the government tries to do that, Mr. Alford's counsel can at least attempt to mitigate the taint by showing that the evidence distinguishes his conduct from others'. But loaded terms operate more subliminally and are harder to confront. The government's response makes clear that it believes the word "rioter" can be used to describe a person whose conduct was peaceful. Doc. 59 at 3 (arguing that "[p]olice officer[s] . . . could not distinguish between 'peaceful' rioters and violent ones"); *but see* Merriam-Webster, *Riot*, https://www.merriam-webster.com/dictionary/riot (defining a riot as "a *violent* public disorder" or "public *violence*, tumult, or disorder" (emphasis added)). The government makes no secret of its intent to tar Mr. Alford with the same brush as everyone around him. The Court should not allow it. A conviction must be based on an "individualized determination[] of guilt based on the

4

evidence presented at trial," *United States v. McGill*, 815 F.3d 846, 895 (D.C. Cir. 2016), and the government should not have a free hand to use terms that suggest collective culpability and invite the jury to judge the case accordingly.

II.  **Even if the government is allowed more latitude in terminology during its closing argument, loaded language should not be allowed during opening statements and presentation of evidence.**

The government's response also reflects no nuance as to how the stage of the trial may affect what language may be permissible. When the evidence is closed and the parties give their summations, the jury can decide whether a lawyer's words fairly characterize the evidence—though even then, words that emphasize improper considerations like character and guilt by association should be excluded to prevent confusion of the issues. But at earlier stages of the trial, when jurors are still waiting to hear the whole story, they are more likely to hear words like "rioter," "mob," and "insurrection" as facts in themselves, rather than what they really are: opinions about the facts.

During witness examination, a question that includes such a word is functionally a compound question, not to mention argumentative. Take, for instance, a question like "When did you learn about the riot at the Capitol?" It's ostensibly a question about knowledge and timing, and a witness would likely answer with a time estimate. But in doing so, the witness also would implicitly endorse the questioner's "riot" characterization. The jury would not know whether the witness accepted the word because he considered it accurate or simply believed he wasn't being asked

about the word. As these examples show, loaded, inflammatory language is especially prejudicial before and during the presentation of evidence.

**III.   The government has no legitimate need to use prejudicial language to make its case, and the Court should restrict such language.**

Allowing government lawyers and witnesses to use loaded and inflammatory terms in front of the jury would risk obvious prejudice to Mr. Alford's defense. The government has shown no need to use it, much less a need great enough to outweigh the prejudice. Jurors can identify a mob or a riot when they see one; if the characterization fits, they can draw that conclusion themselves instead of having the government feed it to them—particularly since the existence or nonexistence of a mob or a riot is not relevant to any of the charges.

The government advocates for the right to use such terms for improper purposes. Calling Mr. Alford a rioter, and the events around him an insurrection, might help the government persuade jurors that he was disorderly and disruptive because he was around others who were, or that he intended to impede government business because others did. But those purposes are not rooted in the elements or the applicable principles of criminal liability. The government would not be unfairly prejudiced by a pretrial ruling that it should present its case in objective terms instead of inflammatory, subliminal jabs. *See Felton*, 417 F.3d at 103 (listing "threat of unfair prejudice, frequency of use, and alternative means of description" among considerations in whether to allow "epithet and rhetoric").

## IV. Conclusion

Mr. Alford asks the Court to exercise its discretion to bar or limit the use of prejudicial language at trial, and particularly before and during the presentation of evidence. He also renews his request that the Court allow time during the pretrial conference, now set September 2, 2022, for the parties and the Court to discuss the appropriate parameters.

Respectfully submitted,

KEVIN L. BUTLER
Federal Public Defender
Northern District of Alabama

**/s/ James T. Gibson**
JAMES T. GIBSON
Assistant Federal Public Defender

**/s/ Tobie J. Smith**
TOBIE J. SMITH
Research & Writing Attorney

Federal Public Defender's Office
Northern District of Alabama
505 20th Street North, Suite 1425
Birmingham, AL 35203
205-208-7170
tobie_smith@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, I electronically filed the foregoing via this Court's CM/ECF system, which will send notice of such filing to all counsel of record.

Respectfully submitted,

**/s/ Tobie J. Smith**
TOBIE J. SMITH
Research & Writing Attorney
