UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 21-cr-263 (TSC) |
| | : | |
| RUSSELL DEAN ALFORD, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' TRIAL BRIEF

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and legal issues that may be brought before the Court. As described below, the government will introduce video evidence, testimony from law enforcement witnesses, and admissions made by the defendant in a law-enforcement interview. The parties have stipulated to the authenticity of the United States Capitol Police (USCP) Closed Circuit Television (CCTV) recordings in this case, to certain geographic details about the Capitol Building as well as the surrounding area and the events on January 6, 2021, the identification of the defendant, the authenticity of the defendant's cell phone photographs and videos, as well as the Secret Services responsibilities and the Presence of Vice President Pence.

  A.  **Statement of the Case**

The government has charged the defendant, Russell Dean Alford, with four crimes relating to Congress's meeting at the United States Capitol on January 6, 2021, to certify the Electoral College vote for President. First, he is charged with entering and remaining in a restricted building (18 U.S.C. § 1752(a)(1)). Second, he is charged with disorderly or disruptive conduct in a restricted building (18 U.S.C. § 1752(a)(2)).   Third, he is charged with disorderly and disruptive conduct in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct

of a session of Congress or either House of Congress (18 U.S.C. § 5104(e)(2)(D)). Lastly, he is charged with parading, demonstrating, and picketing in a Capitol Building (18 U.S.C. § 5104(e)(2)(G)).

Mr. Alford has pleaded not guilty to all charges. He maintains that he did not go anywhere he knew was off limits and was merely present as an observer. ECF No. 84.

The defendant and a friend drove from Alabama to the District of Columbia to attend the Stop the Steal rally. They got a hotel outside of the city, and then went to D.C. on January 6, 2021 to attend the rally. At the conclusion of the rally, the crowd—including the defendant—began to walk towards the U.S. Capitol. When he approached the Capitol, the defendant entered the building. The defendant claimed that he followed the crowd into the Capitol and entered through doors that had been broken open by unknown people. He said he did not see what happened at the front of the crowd, or how the doors had been opened in the first place. The defendant acknowledged that he smelled tear gas.

The dispute between the parties, in this case, will center around the defendant's *mens rea*. The government's evidence will prove that the defendant knew he was not allowed inside the building, that his presence inside the building was disruptive, and that the defendant intended to be disruptive by entering and remaining in the building. That evidence will include: (1) the defendant's Facebook communications, before the riot, which reveal his awareness of Congressional proceedings and his intent to resist the certification of President Biden's victory; (2) the defendant's entry into the Capitol building through a door that had sustained clear and obvious damage; (3) the defendant's entry into the Capitol building despite a piercing alarm at his point of entry; (4) the defendant's decision to move further into the Capitol building even

2

after police officers marshalled to expel other rioters;; (6) the defendant's post-riot messages on Facebook revealing his awareness of the nature of the riot; and (7) the defendant's admission to the FBI that he entered the Capitol building through doors broken open by others. That evidence will demonstrate the defendant's criminal intent.

### B. List of Stipulations

The parties have stipulated to the admissibility of several exhibits, the accuracy of the USCP CCTV video, defense measurements and estimates of relevant distances in and around the U.S. Capitol, the identity of the defendant and his presence in the U.S. Capitol on January 6, 2021, and aspects of what would have been testimony by a United States Secret Service witness. *See* Agreed stipulations attached as Exhibit A.

### C. List of Government Witnesses

1. <u>Lieutenant George McCree - USCP</u>

Lieutenant McCree was on duty and present at the U.S. Capitol on January 6, 2021. At that time, he was assigned to the House Chamber area of the U.S. Capitol. Lt. McCree was physical present with members of the United States House of Representatives in the House Gallery at or near the time of the defendant's entry and presence in the U.S. Capitol. He is familiar with the video surveillance system and radio and phone communications systems. He will provide an overview of the Capitol and the events of the day, including a description of the restricted perimeter and identify a map of the U.S. Capitol's restricted perimeter (Ex. 401). The government anticipates that Lt. McCree will testify concerning government's exhibits 100-107, 400-407, and potentially others. Based upon discussions and coordination with the defense, the government anticipates that Lt. McCree will also be able to testify concerning defense exhibits 17-22i, 25-28,

3

34-36, and 38-42.

    2.    <u>FBI Special Agent Jessica Moore</u>

Jessica Moore is a Special Agent (SA) with the FBI in Alabama. On January 20, 2021, she and another SA interviewed the defendant at his business Alford's Paint & Body in Hokes Bluff, Alabama. SA Moore will testify about the interview and the defendant's statements. Upon seeing the Agents walk toward him in the parking area of his business, Alford stated, "I wondered when ya'll were going to show up. Guess you've seen the videos on my Facebook Page." The defendant then asked the Agents if they were going to take him to jail. SA Moore will testify about the defendant's statements and may testify about the videos or Facebook video posts.

    3.    <u>Officer Nicole Roth – USCP</u>

USCP Officer Nicole Roth was present in the vicinity of the Upper House Door area when the defendant was present. Officer Roth is visible in the various video footage and will testify to the circumstances as they were present in that area near the Upper House door. Officer Roth was part of the law-enforcement response to expel the rioters. She is present in much of the interior USCP CCTV video footage, the BWC footage, as well as the third party video footage. She will testify about the video footage and the events at and near the Upper House door, as well as circumstances around the U.S. Capitol.

    4.    <u>Captain Ashley Mancuso</u>

Then-Lieutenant Ashley Mancuso was present in the area near the Upper House door and is visible in most of the USCP CCTV video and the BWC video of the events at and near the Upper House door and will testify about the circumstances in that area. Officer Mancuso was part of the Metropolitan Police Department (MPD) law-enforcement response to expel the rioters from the

area of the Upper House door. Then-Lieutenant Mancuso's squad was called away from another assignment to assist in expelling rioters from the U.S. Capitol. She will testify about the video footage and the events at and near the Upper House door, as well as circumstances around the U.S. Capitol, specifically the BWC footage in Exhibits 108, 109, 110, and 113.

5. <u>FBI SA Jeffrey Weeks</u>

SA Jeffrey Weeks is an FBI agent who was assigned to assist in the investigation involving Mr. Alford. SA Weeks swore out the complaint and affidavit for the Facebook records. SA Weeks will testify about the Facebook records (Exhibits 300-334) and the defendant's cell phone photos and video (Exhibits 200-216). SA Weeks may also testify concerning the video of the defendant's location and presence in the U.S. Capitol.

**D.     List of Expert Witnesses**

The government has identified no expert witnesses. The defense has identified Dr. Ward as an expert in inattentional blindness. Her testimony is subject to the Courts previously entered order. *See* ECF No. 83. The Court granted the government's motion. However, the Court ruled that the expert testimony may be admitted, pending a hearing on its admissibility, should the Defendant take the stand and the expert testimony relate to his testimony. The Defendant must notify the court of its intention to introduce this evidence beforehand, so that the court may schedule a time for this hearing. ECF No. 83.

**E.     List of Prior Convictions**

None.

**F.     List of Government Exhibits**

Attached.

5

    **G.**       **Stipulations**

*See* Exhibit A.

    **H.**       **Issues in Dispute – Facebook Exhibits, Length of BWC and 3rd Party video**

The parties have partially or fully resolved or amended some of their exhibits or objections previously raised. The defendant has stipulated the admissibility of some of the video and photographic evidence in the case and the government has agreed to redact various video files, including by removing the Ashli Babbitt shooting, and matters preceding it, from another video. The government has also redacted some logos present on the third-party videos as well some advertisements on the defendant's video posted to his Facebook page. Nevertheless, the parties still disagree on several issues, including the Facebook exhibits and the availability of a subjective good faith defense, which are both discussed below. The government has agreed to redact video that shows the aftermath of the Ashli Babbitt shooting, but will still seek to admit BWC video, the defendant's video, and third-party video in which the defendant was physically present when the shooting was discussed by rioters.

    **A.**       **The Facebook exhibits**

Defendant disputes the relevance and admissibility of a number of the government's exhibits, specifically some of the Facebook evidence. The government's proposed Facebook Exhibits are attached as Exhibit B. Although the defendant has not challenged the authenticity of the evidence pursuant to the Business Records Certificate produced, he does challenge the relevance of some of the exhibits and may claim that some of the evidence is unduly prejudicial. *See* Objections to Government's Exhibits ECF No. 67. See also ECF No. 70 (government response) and ECF No. 78 (reply to response). The government maintains that its video and social

6

media evidence is relevant, and that its probative value is not outweighed by any of the dangers articulated in Rule 403. See ECF No. 70.  The evidence is relevant at a minimum, to establish Alford's state of mind and intent on January 6, 2021.

The defendant has specifically objected to those Facebook Exhibits that pre-date the events of January 6, 2021.  The defendant claims:

> Virtually all of the exhibits containing material that predate the events of January 6, 2021, concern Mr. Alford's political views, including his staunch support for then-President Trump. These exhibits are either irrelevant as a whole or are of such negligible probity that they fail the Rule 403 balancing test.

ECF No. 67, pg. 3.  Elsewhere, the government has explained its purpose in offering these exhibits. ECF No. 70, pg. 2-6.  In brief, the defendant's Facebook activity from November 3, 2021 through March 31, 2021 demonstrates his intent. Immediately after the 2020 Presidential Election, Alford posted messages about refusing to accept the results. Within weeks, Alford's focus had shifted to certification of the Electoral College vote on January 6, 2021, and he asked friends about taking a road trip to Washington, D.C. His statements will show why he traveled, what he hoped to accomplish, and what he intended as he entered and remained in the United States Capitol building.

"[T]he Supreme Court has explicitly held that courts may consider otherwise-protected speech to establish a defendant's motive or intent during the commission of some other unlawful conduct." *United States v. Chansley*, 525 F. Supp. 3d 151, 164 (D.D.C. 2021) (citing *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (holding that the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent")). Moreover, the District Courts considering this precise issue have relied upon evidence concerning January 6, 2021 defendant that both pre-date and post-date the events of January 6, 2021.  *See*

*United States v. Jesus Rivera*, No. 21-060 (CKK), ECF No. 62 (D.D.C. Jun. 17, 2022). Statements made before the commission of a crime, which are probative of motive to commit the crime, generally are not excludable under Rule 403—even where incendiary. *See, e.g., United States v. Khatallah*, 2017 U.S. Dist. LEXIS 227265, at *6-7 (D.D.C. 2017); *United States v. Anthony Robert Williams*, 1:21-cr-00377-BAH, Tr. 06/27/2022 at 92, 97, 101-33.

In *Rivera*, the District Court found the defendant guilty of the same four misdemeanor offenses with which the defendant is charged here. In finding the defendant guilty, the Court relied upon Facebook evidence from the defendant's account both before and after the January 6, 2021 riot. The Court found:

> Broadly, the Court finds Defendant was a willing and supportive participant in the riot. Rivera excitedly announced on Facebook at the end of December 2020 that he was going to Washington, DC to attend then-President Trump's "Stop the Steal" rally.

ECF No. 62, pg. 6. The Court further found:

> After Rivera returned home to Florida, he proudly told his followers of his participation in the riot. He was happy to have "challenge[d] authority" on January 6 after "push[ing] his way through [] riot police" and making his way to "the front lines." Gov.'s Ex. 331. Of his followers who did not approve of Rivera's actions, Rivera told them they were "weak as fuck." Gov.'s Ex. 332. He argued that if "BLM [Black Lives Matter] and 'Antifa' has been able to do it so long," a violent assault on the seat of government was appropriate. Id. He further insisted that the insurrectionists were not "Antifa; it was pissed off Patriots." Id. To reiterate, as Rivera told a friend, "I can honestly say I had a great time." Gov.'s Ex. 410.

*Id*., at pg. 9. The defendant's Facebook evidence is both relevant and admissible to prove the defendant's state of mind and intent when he committed the acts in question on January 6, 2021. *See also United States v. Hale-Cusanelli*, No. 21-0037 (TNM), transcript of trial May 26, 2022, pg. 1052 (government's argument that "He knew what the certification procedure meant. On November 25 he says, "it's not over yet." On December 14, he says "Georgia and Pennsylvania have sent faithless electors." On December 14 he says, "meaning the electors are not going to vote

how they were told based on the results." He says "Georgia has competing electors, those that represent Biden and those representing Trump, and then Mike Pence gets to decide").    In short, this evidence will show that that the evidence came to the Capitol at least in part to disrupt a certification proceeding with which he disagreed.

The defendant also objects to other evidence that post-dates the specific time that he was present on Capitol grounds.   The defendant argues:

> The government also wants to admit into evidence material posted to Mr. Alford's account after the events of January 6, 2021. All are inadmissible because, at a minimum, none are probative or relevant to any element of any charged offense. See Fed. R. Evid. 401, 403.

ECF No. 67, pg. 6.   In making his objection, Alford points to a photograph taken by the defendant, and then uploaded by him to his Facebook page.



Taken together with his other posts, this picture, which the defendant took and uploaded after breaching the Capitol building, is probative of the defendant's intent to use—or at least endorse—violent means to "Stop the Steal."   For the same reasons that the pre-riot Facebook posts are relevant and admissible, so too are the post-riot Facebook evidence.   *See Rivera*, No. 21-060

9

(CKK) (Jun. 17, 2022) ECF No. 62.

### B.     The availability of a subjective good faith defense

The defendant maintains that he acted in good faith when he entered the U.S. Capitol and that his good faith is a defense to some of the crimes charged. He has asked for a good faith defense jury instruction. Absent evidence of the defendant's claim of subjective good faith, a good faith jury instruction should not be given. The government's case-in-chief will not include evidence that would support such a defense. In order to warrant any such instruction, the defendant will need to adduce some evidence that would support it. *See United States v. Bledsoe*, No. 21-cr-204 (BAH), ECF No. 215 (D.D.C. July 21, 2022) (where defendant testified that he believed he was permitted in the restricted area, jury instruction provided that read: "A person who enters a restricted area with a good faith belief that he is entering with lawful authority is not guilty of an offense").; *cf. Darab v. United States*, 623 A.2d 127, 136 (D.C. 1993) (acknowledging that defendant would be entitled to a good-faith instruction where the existence of a defendant's "bona fide belief in his or her right to enter" is "genuinely questionable").

### C.     The Ashli Babbitt shooting

The government has reduced the length of the Sullivan video (Exhibit 112) to approximately 5-6 minutes. The video as edited does not show the shooting of Ashli Babbitt, or any footage from the Speakers Lobby where the shooting took place. The defendant captured the crowd's reaction to the shooting and the police efforts to move the crowd. As the crowd was moved, people talked about the shooting as they walked past the defendant. The defendant was aware of this conversation, as demonstrated by his subsequent Facebook posts. The government still plans to introduce BWC video, Mr. Alford's cell phone video, and other video that captures

10

people discussing the shooting in areas where the defendant was present. Based upon discussions with counsel, the government believes the defendant may withdrawal this aspect of his objection to the Sullivan video.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:

/s/ James D. Peterson
James D. Peterson
Special Assistant United States Attorney
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
Mobile: (202) 230-0693
James.d.peterson@usdoj.gov

*/s/ Michael J. Romano*
Michael J. Romano
IL Bar No. 6293658
Trial Attorney, Detailee
601 D Street, N.W.
Washington, DC 20530
Telephone No. (202) 262-7850
Michael.Romano@usdoj.gov